## JACOB HESS v. STATE.

On an indictment for selling cattle, knowing them to be under quarantine, evidence was given on the trial of facts tending to create a belief in the mind of defendant that the quarantine had been removed when the sale was made. It was held error in the court to refuse, on request, to charge for an acquittal if the jury found that the defendant did so believe on those facts.

On error to the Essex Quarter Sessions.

Argued at June Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff in error, *Charles Bried.*

For the state, *Oscar Keen.*

The opinion of the court was delivered by

KNAPP, J. By the first section of a supplement approved March 17th, 1882, to the act establishing a state board of health, passed March 9th, 1877, it is enacted that if any person shall knowingly buy or sell any animal that is in herd held in quarantine, or that has been exposed to a contagious disease, he shall be subject to the penalties contained in section 8 of the supplement approved March 12th, 1880. Section 8 of the act referred to enacts that if any person or persons shall knowingly either buy or sell, or cause to be bought or sold, any animal affected with the pleuro-pneumonia or other contagious or infectious disease, such person shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine not exceeding $200, or imprisonment not exceeding one year, or both, in the discretion of court. Section 2 of the last-named act, authorized the state board of health, upon the breaking out of any contagious or infectious disease, or upon the suspicion of the existence of such disease in any

locality, to proceed to the suspected place and to quarantine said animal or animals, and take such precautionary measures as should be deemed necessary. The act also authorized the appointment of assistants to aid and supervise in the duties of inspection.

The defendant was indicted, tried and convicted for knowingly selling a cow out of a herd then and there held in quarantine by said board under the authority conferred upon it by the legislature referred to.

It was proved on the trial of the indictment that the secretary of the board, together with one Dr. Hawk, one of its medical officers, had in June, 1882, examined defendant's cattle and ordered them quarantined, giving notice thereof to the defendant. The herd was attended by Dr. Hawk through the summer and fall of 1882. In September of that year the defendant sold one of the cows so placed under quarantine, no formal act raising the quarantine having then been promulgated by the board. On the trial Dr. Hawk testified that he informed the defendant verbally that his cattle were no longer sick, and that they were, as he expressed himself, " then all right." This was before the date of the alleged sale. A conviction of this form of criminality could be had only upon evidence showing a sale by a defendant who knew when he made it that interdict had been put upon such sale and was then continuing; and this testimony of Dr. Hawk became important upon the question of defendant's knowledge. The statute provided no form of notice to be given to parties who were placed under this ban of the removal of the restriction. If the board had adopted any settled method of notifying cattle-owners when the quarantine was removed, it was not made known to this defendant, nor was he informed, so far as appears, of what he was to expect as assurance of his release from the prohibition to exercise full ownership and control over his property. He was made to understand that because of sickness in his stock, present or anticipated, he must not put them upon the market, and then by one of the officers who officiated in this business he was told that his cattle were

no longer sick, and after that he made the sale for which the grand jury presented him. Now, under these facts of the case, the court was asked to instruct the jury that if from what Dr. Hawk said to the defendant, the jury should find that the defendant believed the quarantine had then been raised, they must acquit him. This instruction the judge declined to give to the jury, holding, virtually, that his acquittal must depend upon the power of Dr. Hawk to remove the quarantine, and the fact of its removal by him. This charge, I think, should have been given as requested by the defendant. Guilty knowledge of the defendant in the act of sale was an essential element of criminality. The statute makes the existence of the quarantine and the defendant's *scienter* facts jointly essential to guilt. Dr. Hawk may not have had conferred on him the right of revocation which the board of health possessed, or having it, may not, in fact, have exercised such right, and yet his position was such that declarations of a character kindred to those which he admits to have made to defendant, might have led the defendant to the honest belief that he was no longer held under the restrictions which had been put upon him three months prior by the officers of the board of health; and if he did so believe, and under that belief made the sale, it cannot be said that he, within the meaning of the act, knowingly sold an animal from his herd then held in quarantine. As a general rule, intent and knowledge is of the very essence of crime, and wherever a statute makes a guilty knowledge part of the definition of an offence, knowledge is a material fact to be averred and proved. *Rex* v. *Jukes*, 8 *T. R.* 536. And the burden of proof, which, in such case, does not shift, is cast upon the state. 1 *Lead. Cr. Cas.* 553.

The sale of cattle is in itself an innocent, lawful act. The statutory offence is selling in violation of a known interdict. When the case shows that a defendant, on fair and just grounds, believed the legal impediment to be out of the way, guilty knowledge is disproved, and a defence is made.

Upon the testimony referred to, a jury would have been

justified in finding that there was reasonable ground upon which the defendant could have rested an honest belief that the quarantine had been removed, and that thereby such belief had been created in his mind, under which he acted; consequently, that the sale by the defendant was outside of the statutory misdemeanor. The jury should have been permitted to pass upon the question.

The trial judge did charge the jury pointedly upon the necessity of finding guilty knowledge as a requisite to conviction; but he did not permit the jury to give the proper or, indeed, any, effect to an honest, well-founded belief of the non-existence of a fact, the conscious existence of which was of the very essence of guilt.

Other errors have been assigned upon this record, but their consideration is deemed unnecessary, inasmuch as we think the requested charge should have been given, and withholding it was error such as must have prejudiced the defendant in his trial upon the merits. For that cause, the judgment must be reversed and a *venire de novo* awarded.